**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

SHIRLEY ANNE MORGAN,
*Defendant-Appellant*.

No. 12-10056

D.C. No.
4:10-cr-02880-
JGZ-CRP-1

AMENDED
OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted
March 12, 2013—Berkeley, California

Filed June 3, 2013
Amended July 15, 2013

Before: Raymond C. Fisher, Consuelo M. Callahan,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Criminal Law

Affirming the denial of a motion to suppress post-arrest statements, the panel held that a Border Patrol agent's reading of an I-214 Form, which is normally attendant to arrest and custody, did not constitute a re-initiation of interrogation in violation of *Miranda v. Arizona*, where the agent made no effort to question the defendant or secure a waiver of her rights.

The panel also held that the combination of circumstances – re-advising the defendant of her *Miranda* rights, processing drugs seized from her vehicle in her presence, and taking her photograph standing behind the seized drugs – did not constitute the "functional equivalent" of interrogation.

### COUNSEL

Jon M. Sands, Federal Public Defender; Juan L. Rocha (argued), Assistant Federal Public Defender; and Brian I. Rademacher, Assistant Federal Public Defender, Tucson, Arizona, for Defendant-Appellant.

John S. Leonardo, United States Attorney; Christina M. Cabanillas, Appellate Chief; and Robert L. Miskell (argued), Assistant United States Attorney, Tucson, Arizona, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

NGUYEN, Circuit Judge:

Shirley Anne Morgan ("Morgan") appeals her conviction for conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 (count one) and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) (count 2). Morgan claims that the district court erred in refusing to suppress post-arrest statements allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, Morgan argues that after she had invoked her right to counsel, Border Patrol agent Charles Armour ("Armour") improperly re-initiated interrogation by re-reading the *Miranda* warnings to her at the detention facility. Alternatively, Morgan contends that the combination of circumstances—re-reading the *Miranda* warnings, processing the drugs seized from her vehicle in her presence, and taking her photograph with the seized drugs—constituted the "functional equivalent" of interrogation. Because agent Armour's actions were not interrogation or its functional equivalent, we affirm.

## I.

## A.

On October 9, 2010, Morgan drove a vehicle into the United States through the San Miguel Gate, an unofficial port of entry located south of Sells, Arizona. The gate, situated on the border between the United States and Mexico, is intended to be used only by members of the Tohono O'odham Nation. Border Patrol agents are stationed at the gate to conduct immigration and customs inspections.

During inspection of Morgan's vehicle, the agents found several bundles of drugs concealed in a speaker box. Morgan was arrested and, after being advised of her *Miranda* rights, she agreed to speak to agent Armour. However, after a brief conversation, Morgan invoked her right to counsel. At that point, agent Armour terminated the interview.

Agent Armour then transported Morgan and the seized drugs to the Casa Grande Border Patrol station located approximately two and a half hours away from the gate. At the station, the agents loaded the drugs, seventy-seven bricks of marijuana, onto a handcart and brought them to the area where Morgan was being processed so that agent Armour could keep an eye on the evidence while processing Morgan. Agent Armour testified that the drugs were brought to the same room because the evidence "ha[d] to be monitored by an agent at all times." He explained that while there were other agents in the station, he could not have asked them to watch the drugs for him for hours while he was processing Morgan's case, because the agents were also working on other matters. According to agent Armour, it is "common practice" to keep the seized evidence in the same room where an arrestee is being processed.

While processing Morgan, agent Armour read her a portion of a standard form—the I-214 Form—that contained the *Miranda* advisements.[1] Morgan then signed the I-214

---

[1] The portion of the I-214 Form that was read to Morgan states:

> **Warning as to Rights**. Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court, or in any immigration or administrative proceeding. You have the right to talk

Form, acknowledging that the advisements were read to her and she understood her rights. Although the I-214 Form contained a waiver section,[2] agent Armour did not read this section to Morgan or attempt in any way to secure from her a waiver of her *Miranda* rights.

According to agent Armour, agents at the Casa Grande Border Patrol station are required, as part of the routine processing of every arrestee, to read the *Miranda* warnings from the I-214 Form and to obtain an acknowledgement from the arrestee that the form was read. This is so regardless of whether the arrestee has previously invoked his or her *Miranda* rights at the scene of the arrest. In Morgan's case, agent Armour did not read the waiver of rights section to her because she had previously invoked her right to counsel.

After Morgan acknowledged her rights, she stated that she wished to speak to agent Armour. He replied that he could not talk to her without the presence of her attorney because

---

to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before questioning, if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

[2] The waiver section states:

**Waiver.** I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind is being used against me.

she had already invoked her right to counsel. Morgan replied that she did not need an attorney and wanted to waive her right to counsel. Agent Armour then gave her the opportunity to read and sign the waiver section of the I-214 Form. Agent Armour placed her in a jail cell while he finished processing the case. During Morgan's interview, which took place nearly three hours later, she admitted to smuggling marijuana.

Prior to her interview, and at some point during processing, an agent took Morgan's picture using a web cam. The picture shows Morgan standing behind the seized drugs. There is no evidence as to whether the picture was taken before or after she waived her *Miranda* rights on the I-214 Form. Agent Armour testified that the photograph was taken to be posted on Morgan's jail cell door so that the agents could readily identify the cell's occupant. However, agent Armour was unable to explain why the drugs were included in the picture.

**B.**

On October 20, 2010, Morgan was indicted for conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii). Morgan filed a motion to suppress her statements to agent Armour at the station, which the district court denied. Morgan then entered into a conditional plea agreement in which she reserved the right to appeal the denial of her motion to suppress. This appeal followed.

## C.

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo the district court's denial of a motion to suppress. *United States v. Brobst*, 558 F.3d 982, 991 (9th Cir. 2009).

## II.

## A.

Morgan argues that agent Armour's reading of the I-214 Form constituted a re-initiation of interrogation in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  It is undisputed that Morgan invoked her right to counsel when she was arrested at the San Miguel Gate.  The issue, therefore, is whether Morgan was "interrogated" when agent Armour re-advised Morgan of her *Miranda* rights at the station.

The term "interrogation" refers to "express questioning" or its "functional equivalent," which includes "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Here, agent Armour re-advised Morgan of her *Miranda* rights from the I-214 Form as part of the station's standard processing procedure.  Agent Armour testified that the station has "a checklist for prosecution and one of the forms that has to be included in every prosecution" is the I-214 Form, which is read to every arrestee regardless of whether the arrestee has previously invoked his or her rights at the scene of the arrest. Because the reading of the I-214 Form is "normally attendant to arrest and custody," and agent Armour made no effort to

question Morgan or secure a waiver of her rights, we hold that his actions were not the functional equivalent of express questioning such that they were an "interrogation" in violation of *Miranda*. *See Guam v. Ichiyasu*, 838 F.2d 353, 358 (9th Cir. 1988) ("The reading of *Miranda* warnings most certainly is an action 'normally attendant to arrest,' not to be considered police coercion.").

## B.

Alternatively, Morgan argues that the combination of circumstances—re-advising her of the *Miranda* rights, processing the drugs seized from her vehicle in her presence, and taking her photograph standing behind the seized drugs—constituted the "functional equivalent" of interrogation. We disagree. "The standard for determining whether an officer's comments or actions constitute the 'functional equivalent' of interrogation is quite high . . . ." *United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000). Subjecting a suspect to "subtle compulsion," without more, is not the functional equivalent of interrogation. *Innis*, 446 U.S. at 303. Rather, a defendant must show that his statement "was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Id.*; *see, e.g.*, *United States v. Moreno-Flores*, 33 F.3d 1164, 1169–70 (9th Cir. 1994) (holding that an agent's statements to the defendant that the agent had seized approximately 600 pounds of cocaine and that the suspect was in trouble were not the functional equivalent of interrogation because they did not invite a response from the suspect); *Shedelbower v. Estelle*, 885 F.2d 570, 573 (9th Cir. 1989) (holding that an officer's statements to the defendant that his accomplice was in custody, and that the victim identified the defendant's

photograph as one of the men who raped her, were not the functional equivalent of interrogation because they were not the type of comments that would elicit an incriminating remark). As the Supreme Court explained in *Innis*, "the police . . . cannot be held accountable for the unforeseeable results of their words or actions." 446 U.S. at 301–02.

Here, Morgan was not subjected to the functional equivalent of interrogation. Agent Armour processed Morgan in the same room where the drugs were located because he needed to monitor the evidence at the same time. Even assuming that the photograph of Morgan was taken prior to the re-advisement of her *Miranda* rights, it was done as part of the station's processing procedure. These actions, coupled with the routine reading of the I-214 Form, were not unduly coercive, particularly in light of the fact that agent Armour made no attempt to secure a waiver of Morgan's rights or elicit any incriminating statements from her. In fact, even after Morgan expressly waived her rights, agent Armour waited nearly three hours before interviewing her. *Cf. United States v. Orso*, 266 F.3d 1030, 1033–34 (9th Cir. 2001) (holding that an officer's long and detailed conversation with the defendant about incriminating evidence against her was the functional equivalent of interrogation when viewed together with the officer's testimony that he purposely delayed Mirandizing defendant to elicit inculpatory statements), *overruled on other grounds by Missouri v. Seibert*, 542 U.S. 600 (2004).

We agree with the district court that, in the absence of any explanation from the government, photographing Morgan

with the seized drugs is disconcerting.[3]   Nevertheless, viewing the totality of the circumstances, we hold that agent Armour's actions were not "reasonably likely to elicit an incriminating response" and, therefore, did not constitute the functional equivalent of interrogation.

## III.

Because Morgan was not subjected to interrogation or its functional equivalent, we affirm the district court's denial of Morgan's motion to suppress her post-arrest statements.

**AFFIRMED.**

---

[3] We express no view as to whether there may be a valid rationale for this practice. We simply note that the government offered no explanation for it despite having several opportunities to do so.