RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TRAVIS LESTER,

*Defendant-Appellant*.

Nos. 22-6076/6077

─────────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:21-cr-20152-1—Samuel H. Mays, Jr., District Judge.

Decided and Filed: April 16, 2024

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** David M. Bell, FEDERAL PUBLIC DEFENDER'S OFFICE, Memphis, Tennessee, for Appellant. Raney L. Irwin, Mary H. Morris, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

THAPAR, J., delivered the opinion of the court in which GIBBONS, J., joined in full. WHITE, J. (pp. 14–23), delivered a separate opinion concurring in all but Part II.A. of the majority opinion and in the judgment.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge. Travis Lester was convicted of possessing a firearm as a felon. On appeal, Lester claims that *Miranda* and Fourth Amendment violations, evidentiary errors, and sentencing mistakes entitle him to a do-over. We disagree and affirm.

I.

After serving a forty-one-month prison sentence for possessing ammunition as a felon, Travis Lester began a thirty-six-month term of supervised release. Within a few months, Lester fell back into old habits. After twice testing positive for cocaine, he stopped appearing for his required addiction therapy and drug tests. Then Lester was charged with aggravated assault under Tennessee law for striking a woman in the head with a handgun and shooting at two other people.

Based on these charges and other supervised-release violations, Tennessee and the federal government issued arrest warrants. The U.S. Marshals Violent Fugitive Task Force executed them. An informant told the Marshals that Lester was at the Memphis Villa Inn with Shebrica Phillips—his girlfriend, who also had an outstanding arrest warrant. So the Task Force went to the motel and lined up outside the couple's room. The officers knocked and announced themselves. Phillips opened the door, and the officers quickly arrested Lester and Phillips.

While patting Lester down, an officer found a plastic baggie containing a rocklike substance (later determined to be 4.9 grams of crack cocaine) and $869 in his pockets. The officer then asked, "[Is] there anything else on you, any other drugs, anything that would stick or harm me?" 22-6076 R. 50, Pg. ID 106. Lester responded, "No, just some weed in the room." *Id.* Meanwhile, other officers performed a protective sweep of the motel room to ensure nobody else was hiding. They didn't find anyone. But the officers did see a digital scale on the nightstand.

The officers field-tested the rocklike substance, which came back positive for crack cocaine. Based on the crack cocaine, the scale, and Lester's marijuana admission, the officers secured a warrant to search the room. Their search uncovered a stolen .40 caliber pistol loaded with a high-capacity magazine, a small bag of marijuana, and the scale they'd seen earlier.

A grand jury charged Lester with being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Before trial, Lester filed various motions. Relevant here, he filed a motion to suppress all the evidence derived from the officers' protective sweep and his marijuana admission on Fourth Amendment and *Miranda* grounds. Lester also filed a motion in limine to

exclude evidence that he used the same pistol to commit three violent crimes in the months before his arrest. The district court denied Lester's suppression motion after determining the arresting officers hadn't violated his rights. But the court granted Lester's motion in limine, reasoning that any mention at trial of his prior violent acts would be unfairly prejudicial.

At trial, one of the officers described how he arrested Lester and found crack cocaine and cash in his pockets. Another officer explained how he obtained the search warrant and found the pistol, scale, and marijuana. Phillips swore under oath that she did not own the gun. And Siara Dowdy—one of Phillips's friends who also knew Lester through Phillips—testified she saw Lester with the same pistol four days before his arrest, when he came to her house to sell her father cocaine.

The jury convicted Lester, and the district court sentenced him to 120 months in prison. Because Lester violated the supervised-release conditions for his earlier ammunition-possession conviction, the court imposed an additional seventeen-month prison sentence to be served consecutively.

Lester appeals, alleging various pre-trial, trial, and sentencing errors.

II.

*Pre-trial claims.* Lester argues the district court should've granted his motion to suppress. Specifically, he asserts that the arresting officers violated: (A) his *Miranda* rights when they questioned him before issuing a warning; and (B) his Fourth Amendment right against unreasonable searches when they searched his motel room before obtaining a warrant. We address each in turn, reviewing the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). Throughout, we view the evidence in the light most likely to support the district court's decision to deny the suppression motion. *Id.*

A.

*Miranda.* The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To protect this right, the

Supreme Court has held that in certain contexts, police must issue *Miranda* warnings before interrogating a suspect in their custody. *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

Lester argues the arresting officer violated that rule. Before informing Lester of his *Miranda* rights, the officer asked Lester during the pat-down if there was "anything else on you, any other drugs, anything that would stick or harm me." 22-6076 R. 50, Pg. ID 106. Lester's response: "No, just some weed in the room." *Id.* On appeal, Lester argues that this unwarned admission and the fruits of that admission—most importantly, the .40 caliber pistol in the motel room—should've been suppressed. We disagree.

<u>Marijuana Statement</u>: First, *Miranda* doesn't apply. That's because *Miranda* only governs "interrogations." *Rhode Island v. Innis*, 446 U.S. 291, 297–98 (1980). And police questioning isn't an "interrogation" when an officer asks about information "he was already entitled to know" through a search incident to arrest. *United States v. Woods*, 711 F.3d 737, 740–42 (6th Cir. 2013). That's exactly what happened here. Since the officer had just arrested Lester, the officer inevitably would have discovered any items on Lester's person. *See United States v. Robinson*, 414 U.S. 218, 235 (1973). Thus, the officer was entitled to ask about those items. *Woods*, 711 F.3d at 741 ("To say that Officer Mardigian had the right to physically go through Woods's pockets but could not simply ask him 'What is in your pocket?' would be illogical."). To be sure, Lester responded to the officer's question with self-incriminating evidence about something that wasn't on his person. But an interaction doesn't transform into an "interrogation" merely because a suspect voluntarily offers an "unexpected and unresponsive" answer. *Id.*; *see also Innis*, 446 U.S. at 301–02. Thus, the officer's question wasn't an interrogation, and *Miranda* doesn't apply.

In response, the concurrence insists the officer's question was an "interrogation" because it was reasonably likely to elicit an incriminating response.[1] Perhaps, but that's not the whole

---

[1]The concurrence also faults us for deciding a forfeited issue. We reject this characterization. On appeal, the Government briefed the "interrogation" question at length. 22-6076 Appellee Br. 26–27. It's true that the Government didn't raise this point before the district court. But in our adversarial system, that's Lester's argument to make, not ours. He didn't. So even though the government failed to raise the interrogation issue below, Lester "forfeited the forfeiture." *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013). By contrast, the concurrence would have us decide this question on harmless-error grounds—an argument the Government hasn't made. We decline to opine on this unraised argument. *See Ayers v. Hudson*, 623 F.3d 301, 317 & n.12 (6th Cir. 2010).

story.  Under Supreme Court precedent, questions asked "normally attendant to arrest" aren't "interrogations" subject to *Miranda*—even if they might yield an incriminating answer.  *Innis*, 446 U.S. at 301; *see also Woods*, 711 F.3d at 743 ("Woods's argument that *any* express questioning of a suspect in custody amounts to an interrogation . . . [is] conclusively refuted by the [Supreme] Court's caselaw.").  Applying this rule, our court in *Woods* held that questions about what's on an arrestee's person are "normally attendant to arrest" and thus outside *Miranda*'s scope.  711 F.3d at 740–44.

Attempts to distinguish *Woods* fall short.  The concurrence argues that the officer's question here was more likely to elicit an incriminating response than the question was in *Woods.* Not so.  Just as in *Woods*, the answer to the officer's narrow question here ("Is there anything else on you, any other drugs, anything that would stick or harm me?") could have been "either innocuous or incriminating."  *Id.* at 741.  After all, Lester could have said "no."  If anything, the open-ended *Woods* question ("What is in your pocket?") was *more* likely to incriminate. Imagine Lester had a stolen credit card or forged prescription in his pocket.  Unlike the officer's targeted question in this case, the *Woods* question would sweep in this and limitless other incriminating information.  Thus, this case is well within the rule established in *Woods.***2**

Moreover, even if *Miranda* did govern this question, it would be subject to the "public safety" exception.  *See New York v. Quarles*, 467 U.S. 649 (1984).  Under that exception, officers may ask "questions necessary to secure their own safety or the safety of the public" without violating *Miranda*.  *Id.* at 659.

*Quarles* is the leading case.  There, police knew the suspect had a gun but couldn't find it on his person.  *Id.* at 651–52.  Concerned that someone else might recover the weapon, the officer asked the suspect where it was.  *Id.* at 652.  Only after the officer found the gun hidden in a supermarket did he *Mirandize* the suspect and ask further questions.  *Id.*  The Court held that

---

**2**The concurrence also makes a passing reference to the officer's subjective intent.  But as the Supreme Court has made clear, the test for whether a question is an "interrogation" is objective.  What matters is what the officer "should" know about his question's impact, not whether the officer "deliberately elicited" incriminating information.  *Innis*, 446 U.S. at 300–01, n.4 (quotation omitted).  To be sure, the officer's intent might be probative, but it is never dispositive.  And to the extent we can discern the officer's intent here, he was trying to keep himself safe during the pat-down.

the suspect's risk of self-incrimination was outweighed by the officer's need to protect himself and the public. *Id.* at 656–57. And the Court emphasized that the officer limited the risk of self-incrimination by asking "only the question necessary to locate the missing gun." *Id.* at 659.

Applying those principles here, the officer didn't overstep by screening for items that could "stick or harm" him during the pat-down. The officer had already found crack cocaine on Lester's person, so it was reasonable to worry that Lester might also be carrying related hazards—such as drugs that can be absorbed directly or indirectly through touch, or drug paraphernalia that might stick (needles) or cut (razors) him.[3] *See United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) (holding pre-*Miranda* interrogation permissible "when officers have a reasonable belief based on articulable facts that they are in danger"). And just as in *Quarles*, the officer minimized the risk of self-incrimination by asking a question framed only to secure his safety, rather than one probing for incriminating evidence. 467 U.S. at 659.

In at least one respect, the public-safety exception is even more justified here than it was in *Quarles*. There, the officer asked Quarles for information that the officer might not otherwise find—a gun hidden in a supermarket. *Id.* at 652. Here, by contrast, the arresting officer asked Lester only for information the officer was entitled to know—what Lester had on his person. *See Robinson*, 414 U.S. at 235; *see also United States v. Lackey*, 334 F.3d 1224, 1228 (10th Cir. 2003); *United States v. Reyes*, 353 F.3d 148, 154 (2d Cir. 2003). In sum, Lester's marijuana admission fits comfortably within the public safety exception to *Miranda*.

*.40 Caliber Pistol*: Lester also claims the pistol recovered from the motel room should've been suppressed. That's because, he argues, the search warrant was supported by his marijuana admission. But the marijuana admission didn't violate *Miranda*, so Lester's pistol-suppression argument lacks its essential premise.

---

[3]We've previously applied the public-safety exception in related cases. *See United States v. Williams*, 483 F.3d 425, 428–30 (6th Cir. 2007) (gun); *United States v. Hodge*, 714 F.3d 380, 385–87 (6th Cir. 2013) (bomb); *United States v. Mohammed*, 501 F. App'x 431, 443–44 (6th Cir. 2012) (per curiam) ("weapons, drugs, or anything sharp that would stick"); *see also United States v. Simpkins*, 978 F.3d 1, 5 (1st Cir. 2020) (Officer: "What's that?" Suspect: "[J]ust a little bit of fentanyl."); *United States v. Reyes*, 353 F.3d 148, 152–55 (2d Cir. 2003) (asking whether defendant had "anything" that could harm the officer); *United States v. Young*, 58 F. App'x 980, 981 (4th Cir. 2003) ("Do you have any sharp objects, knives, needles, or guns[?]"); *United States v. Webster*, 162 F.3d 308, 332 (5th Cir. 1998) (needles); *United States v. Carrillo*, 16 F.3d 1046, 1049–50 (9th Cir. 1994) (drugs or needles); *United States v. Lackey*, 334 F.3d 1224, 1126–28 (10th Cir. 2003) (guns or sharp objects).

What's more, not even a *Miranda* violation would've been enough to exclude the pistol—or any of the other physical evidence discovered in the motel room. *Miranda* errors don't "require the suppression of the [physical] fruits of a[n] un-*Mirandized* statement," so long as the statement was voluntary. *Vega v. Tekoh*, 597 U.S. 134, 145–46, 146 n.3; *accord United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion); *id.* at 644–45 (Kennedy, J., concurring in the judgment) ("Admission of nontestimonial physical fruits . . . does not run the risk of [violating the Fifth Amendment]."). Lester's gun is undoubtedly "physical." *Patane*, 542 U.S. at 634 (plurality opinion); *id.* at 645 (Kennedy, J., concurring in judgment). And Lester doesn't argue that his answer to the officer's question was involuntary. *See id.* at 634 (plurality opinion). Thus, the court correctly admitted the gun at trial.

B.

*Fourth Amendment.* Lester also challenges the protective sweep that the officers conducted to ensure nobody else was present in Lester's room who might threaten officer safety during the arrest. *See Maryland v. Buie*, 494 U.S. 325, 334–36 (1990). Because the officers didn't have a warrant, Lester argues the sweep violated his Fourth Amendment right against unreasonable searches. And because the officers referenced the scale they saw during the sweep in their search warrant application, Lester argues that any fruits of the subsequent search should've been suppressed.

Lester's arguments are meritless. Even assuming the sweep was unconstitutional, the Government still would have obtained the evidence through other, independent means. *See Murray v. United States*, 487 U.S. 533, 537–44 (1988). The officers testified at the suppression hearing that they would've applied for the search warrant even if they hadn't swept the room or seen the scale. *See id.* at 540 n.2, 542. And without the sweep and scale, they had ample evidence to secure a warrant: Lester had crack cocaine in his pocket as he walked out of the motel room, and he admitted there were more drugs—marijuana—inside. *See United States v. Jenkins*, 396 F.3d 751, 757–60 (6th Cir. 2005). That's enough to give the officers probable cause. *See United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (noting police only need to show "a probability or substantial chance" that there's contraband in the place to be

searched (quotation omitted)).  Accordingly, there was an independent source for the fruits of the search, and the court was correct to admit this evidence.

### III.

*Trial claims*.  Next, Lester claims for the first time on appeal that the district court made two evidentiary mistakes at trial.  Both relate to the same witness—Siara Dowdy, who saw Lester at her house with the same .40 caliber pistol four days before his arrest.  Lester argues: (A) Dowdy's testimony was unduly prejudicial, and (B) the Government didn't properly notify Lester that Dowdy planned to testify at trial.

### A.

*Rule 403*.  Under the Federal Rules of Evidence, relevant evidence is admissible unless another rule says otherwise.  Fed. R. Evid. 402; *see also* Fed. R. Evid. 401.  One exception is for so-called "other acts" evidence:  "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  On the flipside, other-acts evidence *can* be admitted for different purposes—such as to prove a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  That said, even when offered for a permissible purpose, the court "may" exclude other-acts evidence if its probative value is "substantially outweighed by" the danger of "unfair prejudice."  Fed. R. Evid. 403.

Lester doesn't dispute that Dowdy's testimony was offered for a proper purpose.  But for the first time on appeal, he argues the district court should nonetheless have excluded Dowdy's testimony as unfairly prejudicial under Federal Rule of Evidence 403.[4]  Since Lester didn't preserve this objection, he faces a doubly demanding burden on appeal.[5]  First, district courts

---

[4]In passing, Lester also suggests the district court failed to make an on-record determination that sufficient evidence exists that the incident Dowdy described actually happened.  But such a finding "may be implicit by virtue of the fact that the court admitted the evidence."  *United States v. Matthews*, 440 F.3d 818, 828 (6th Cir. 2006) (quotation omitted).

[5]Lester claims he preserved these objections at trial.  We disagree.  Lester objected to Dowdy's testimony on Rule 401 "relevance" grounds, not the Rule 403 unfair-prejudice grounds he now raises on appeal.  22-6076 R.

enjoy "broad discretion" when making Rule 403 determinations. *United States v. Wilder*, 87 F.4th 816, 819–20 (6th Cir. 2023) (quotation omitted). And second, Lester's failure to object below means he must also run the plain-error gauntlet by showing "(1) an error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (cleaned up).

Lester can't show abuse of discretion, much less plain error. In his attempt to show unfair prejudice, Lester points to the court's pre-trial ruling on his motion in limine. The district court excluded evidence that Lester had violently wielded the same gun in three recent incidents—striking a woman over the head with it on one occasion, firing shots at Phillips's car on another, and shooting at a couple on a final occasion. Specifically, the court determined that the risk the jury would punish Lester for these violent past incidents in the present prosecution outweighed their probative value. Lester argues the court should have excluded Dowdy's testimony for the same reason and because the jury would view him negatively for also having had drugs.

But Dowdy's testimony was both more probative and less prejudicial than the other acts that the district court excluded. Unlike the acts that Lester committed *months* before his arrest, Dowdy testified that she had seen Lester possess the firearm just four *days* earlier. And "temporal proximity increases a prior act's probative value." *See United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018). Further, unlike the violent acts the court excluded, Lester didn't shoot at or hit anyone with the gun while at Dowdy's home. Quite the contrary: Dowdy said Lester kept the gun on his lap throughout the peaceful encounter. True, Dowdy also testified that Lester sold her father cocaine. But the jury was already going to hear testimony that Lester had crack cocaine and a wad of cash in his pocket as well as a digital scale in his room at the time of

---

117, Pg. ID 1108–09; *see United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989) ("The 'plain error' rule also applies to a case, such as this, in which a party objects to the submission of evidence on specific grounds in the trial court, but on appeal the party asserts new grounds challenging the evidence."). And while Lester made passing reference to the court's earlier ruling on his motion in limine, that's not enough. To preserve a claim for appeal, parties must object with enough specificity to give the district court a chance to consider the objection in the first instance. *See United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004). Lester didn't do that here, even though the court, after determining the evidence was relevant, invited him to "object if he thinks any part of [Dowdy's testimony] is inadmissible." 22-6076 R. 117, Pg. ID 1108–09.

his arrest.  So, the marginal prejudicial impact (if any) of Dowdy's testimony was slight.  Thus, the district court did not err, let alone plainly err, in admitting Dowdy's testimony.

## B.

*Rule 404(b)(3).*  Lester alleges one final error with respect to Dowdy's testimony—lack of notice.  The Federal Rules of Evidence instruct the Government to provide the defense "reasonable" notice of any other-acts evidence it intends to offer at trial.  Fed. R. Evid. 404(b)(3)(A).  The Government spoke with Ms. Dowdy a few days before trial, but it didn't notify Lester of Dowdy's testimony until right before she took the stand.  Lester argues this delay entitles him to a new trial.

Because Lester didn't raise this argument in the district court, we review for plain error.[6] We find none.  To be sure, we do not condone the Government's failure to give Lester advance notice of this testimony.  But even assuming the delay was obvious error, Lester does not "clearly articulate how his substantial rights were prejudiced by the lack of advance notice from the government." *United States v. Gonzalez*, 501 F.3d 630, 640 (6th Cir. 2007).  Lester doesn't explain what difference a couple days' added notice would've made to the admission of the evidence—much less the outcome of his trial.  *See United States v. Olano*, 507 U.S. 725, 734 (1993).  He doesn't, for instance, argue that he could've unearthed new evidence to impeach Dowdy, or articulate new questions he would've asked her on cross-examination.  Nor does he explain how any of this might have altered the trial verdict.  Accordingly, Lester can't meet his plain-error burden.

## IV.

*Sentencing claims.*  Lester also asserts the district court committed two sentencing errors. He (A) claims the court miscalculated his Guidelines range.  And he (B) challenges the

---

[6]Here too, Lester disputes the standard of review.  And here too, we find that Lester failed to object with the requisite specificity.  In his motion for a judgment of acquittal, Lester argued that the Government failed to discharge its disclosure obligations under Federal Rule of Criminal Procedure 16.  But Federal Rule of Evidence 404(b) and Federal Rule of Criminal Procedure 16 are distinct rules that impose distinct obligations.  Accordingly, Lester's Rule 16 objection at trial didn't preserve a Rule 404(b) objection on appeal. *United States v. Buford*, 106 F. App'x 400, 402 (6th Cir. 2004).  Nor can Lester's relevance objection to Dowdy's testimony excuse his forfeiture of the 404(b)-notice argument. *United States v. Gonzalez*, 501 F.3d 630, 637–38 (6th Cir. 2007).

procedural reasonableness of the district court's decision to impose a consecutive, seventeen-month revocation sentence for his earlier ammunition-possession conviction.  Both arguments fail.

A.

*Guidelines*.  The Guidelines provide for a four-level sentencing enhancement "[i]f the defendant . . . used or possessed any firearm . . . in connection with another felony offense . . . ."  U.S.S.G. § 2K2.1(b)(6)(B).  To support the enhancement, the district court referenced Tennessee law, which makes it a felony to possess with intent to sell half a gram or more of cocaine.  *See* Tenn. Code Ann. § 39-17-417(a)(4), (c)(1).  Specifically, the district court relied on Lester's 4.9 grams of crack cocaine, his digital scale, and the $869 in cash (despite his unemployment) to support the inference that Lester likely intended to sell the cocaine.  *Cf. United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001).

On appeal, Lester argues the Government failed to prove Lester's intent to sell the drugs by a preponderance of the evidence.  He asserts that each piece of evidence considered in isolation can be explained by non-trafficking purposes.  Namely, a heavy cocaine user might keep 4.9 grams of cocaine on him for personal use; Lester, in fact, had a history of heavy substance use; drug buyers sometimes use scales to double-check their sellers' quantity calculations; and Lester had a large wad of cash on him because he was living a "transient lifestyle" to deal with his "warrant problem."  22-6076 Appellant Br. 53.

The defect in Lester's analysis is that he views each piece of evidence in artificial isolation.  *Cf. District of Columbia v. Wesby*, 583 U.S. 48, 60–61 (2018) ("[T]he whole is often greater than the sum of its parts—especially when the parts are viewed in isolation.").  When reviewing evidence for a sentencing enhancement, courts consider the totality of the circumstances.  *E.g.*, *United States v. Adams*, 214 F.3d 724, 729 (6th Cir. 2000).  And as the district court explained at sentencing, the evidence viewed in aggregate indicates that Lester likely intended to sell the drugs.  *See United States v. Rosales*, 990 F.3d 989, 996 (6th Cir. 2021) (considering drug-distribution evidence "as a whole").  Thus, the court correctly applied the enhancement.

B.

*Procedural reasonableness.*   In addition to the firearm-possession sentence, the district court also sentenced Lester for violating the supervised-release conditions related to his earlier ammunition-possession conviction.   The court imposed a seventeen-month sentence—less than the Guidelines' twenty-four-month recommendation—and ordered it to run consecutively to his fresh 120-month felon-in-possession sentence.   On appeal, Lester argues this sentence is procedurally unreasonable because (1) the district court erroneously believed it had to impose a consecutive sentence, and (2) the court didn't adequately explain its decision to do so.   Both arguments are unavailing.

First, the district court recognized its authority to impose a concurrent sentence.   To be sure, the court referenced U.S.S.G. § 7B1.3(f)—a Guidelines policy statement that says terms of imprisonment imposed for supervised-release violations "shall" be served consecutively to defendant's other prison sentences.   But then, the court acknowledged the policy statement wasn't binding.   *See United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011); *see also* 18 U.S.C. § 3584(a).   In the district court's words:  "You're supposed to serve it consecutively, but you don't always."   22-6077, R. 73 Pg. ID 254; *see also id.* at Pg. ID 258 ("I believe [the sentence] can be concurrent.").   In fact, the court even said it had imposed concurrent sentences in similar cases on many occasions.   Thus, it's not accurate to say the court thought a consecutive sentence was required.

Second, the district court adequately explained its decision to impose a consecutive sentence.   After considering the 18 U.S.C. § 3553(a) factors, the district court determined it wouldn't be fair to run the revocation sentence concurrently.   *See* 18 U.S.C. § 3584(b).   The court thought it was important to account for Lester's decision to "violat[e] the Court's trust" and "commit[] a new crime while on supervised release."   22-6077 R. 73, Pg. ID 249.   At the same time, the court remained cognizant of the fact that Lester had taken responsibility for most of his supervised-release violations, and that those violations had already impacted the sentence imposed in the related firearm-possession case.   To account for these factors, the district court knocked seven months off the twenty-four-month Guidelines recommendation—three months to account for Lester's acceptance of responsibility, and four months to avoid any "double-

counting" of factors that went into his 120-month felon-in-possession sentence. By taking time off the Guidelines sentence and running the remainder consecutively, the district court gave effect to both its goals: acknowledging the seriousness of Lester's supervised-release violation, while also considering factors favorable to Lester. That thoughtful approach suffices. *See Johnson*, 640 F.3d at 208–09. Accordingly, the district court's decision to impose a seventeen-month consecutive sentence was procedurally adequate.

*       *       *

We affirm.

———————————

**CONCURRENCE**

———————————

HELENE N. WHITE, Circuit Judge, concurring. I agree that Travis Lester's conviction and sentence should be affirmed and join in much of the majority's analysis. I agree that the physical fruits of the officers' search of the motel room were admissible despite the asserted unconstitutionality of the protective sweep of the room and the absence of *Miranda*[1] warnings before U.S. Deputy Marshal Trayon Murray's question during the pat-down search. I also agree that Siara Dowdy's testimony was not unduly prejudicial under Federal Rule of Evidence 403 and that Lester fails to show prejudice from the lack of notice under Rule 404(b)(3); that the district court did not err in imposing a sentencing enhancement for possession of a firearm in connection with another felony or in ordering that Lester's two sentences run consecutively; and that the district court's admission of Lester's response to Murray's pre-*Miranda* question was not reversible error. I write separately, however, because I do not agree with the majority's conclusion that Lester's statement was properly admitted. Rather, I would hold that any error in the admission of the statement was harmless.

I.

When it is clear "beyond a reasonable doubt that [a district court's] error . . . did not contribute to the verdict obtained," that error is deemed "harmless." *United States v. Zakhari*, 85 F.4th 367, 378 (6th Cir. 2023) (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)). Although I recognize that the government has not made a harmless-error argument, it is within this court's discretion to raise harmless error sua sponte, *see Gover v. Perry*, 698 F.3d 295, 299–301 (6th Cir. 2012); *United States v. Butts*, 40 F.4th 766, 774 (6th Cir. 2022). Here, Lester was charged with being a felon in possession of a firearm—but his statement concerned marijuana in the motel room. I am confident that admitting the statement did not prejudice the outcome of Lester's trial. *See United States v. Figueroa-Serrano*, 971 F.3d 806, 813 (8th Cir. 2020) (concluding that the defendant's "un-warned responses" about marijuana "had no bearing on his

———————————

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

guilt for the crime" of which he was convicted, "possessing a firearm as a noncitizen unlawfully present in the United States"); *United States v. Paskett*, 950 F.2d 705, 708 (11th Cir. 1992) (concluding that admission of statements concerning money and contraband allegedly in violation of *Miranda* was harmless because they "did not bear at all upon the [defendant's] bribery charge").

## II.

Despite this cut-and-dried basis to affirm, the majority instead decides a forfeited issue with far-reaching implications—that Murray's question was not even subject to *Miranda* because it was not an "interrogation[]," Maj. Op. 4 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 297–98 (1980)). Alternatively, the majority concludes that the entirety of Murray's question—including the inquiry whether Lester had "any other drugs" on his person, No. 22-6076, R. 50, PID 106— was subject to the public-safety exception to *Miranda*. I disagree on both points.

## A.

Starting with the first point, the majority says that "police questioning isn't an 'interrogation'" for *Miranda* purposes "when an officer asks about information 'he was already entitled to know' through a search incident to arrest." Maj. Op. 4 (quoting *United States v. Woods*, 711 F.3d 737, 740–42 (6th Cir. 2013)). "Since [Murray] had just arrested Lester, the officer inevitably would have discovered any items on Lester's person," and so no *Miranda* violation occurred. *Id.* (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Woods*, 711 F.3d at 741)). This argument "was neither pressed nor passed upon below," and "[w]e need not reach this question to decide the case." *Babcock v. Kijakazi*, 595 U.S. 77, 82 n.3 (2022). It is prudent to "decline to address" such a forfeited issue[2] absent "exceptional circumstances," *United States v. Alvarez-Sanchez*, 511 U.S. 350, 360 n.5 (1994), which the government does not argue exist here, especially in a published opinion with broad application, *see FCC v. Fox*

---

[2]The majority "reject[s] this characterization" because "Lester 'forfeited the forfeiture'" by failing to raise the forfeiture himself. Maj. Op. 4 n.1 (quoting *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013)). But we have discretion to consider whether the government forfeited the argument that Murray's question was not an interrogation, *see United States v. McReynolds*, 964 F.3d 555, 568 (6th Cir. 2020). And it is appropriate to consider whether the government forfeited that argument here because doing so allows us to avoid deciding a constitutional issue with far-reaching implications, *see id.* at 568–69.

*Television Studios, Inc.*, 556 U.S. 502, 529 (2009) ("We see no reason to abandon our usual procedures in a rush to judgment without a lower court opinion. We decline to address the constitutional questions at this time."). But even on the merits of this issue, the majority misses the mark.

Murray's question was an "interrogation." That term encompasses "express questioning" as well as "any words or actions" that officers "should know are reasonably likely to elicit an incriminating response." *Innis*, 446 U.S. at 301. Asking whether a person has drugs or weapons—evidence of illegal activity, *see United States v. Wheaton*, 517 F.3d 350, 364 (6th Cir. 2008)—is reasonably likely to elicit such a response, *see United States v. Ray*, 690 F. App'x 366, 372 (6th Cir. 2017) ("[A]sking a suspect whether he had a criminal record and owned or possessed a firearm certainly amounts to 'express questioning' that 'police should know is reasonably likely to evoke an incriminating response.'" (quoting *Innis*, 446 U.S. at 300–01)); *United States v. Ashmore*, 609 F. App'x 306, 317 (6th Cir. 2015) ("[The officer] asked pre-*Miranda* the one compound question relevant to a felon-in-possession charge: is there a gun in the car and are your fingerprints on it?"); *United States v. Hogan*, 539 F.3d 916, 922 (8th Cir. 2008) (concluding that questions about a suspect's "knowledge of the presence of drugs [in his vehicle], and his willingness to assist in a controlled delivery . . . were reasonably likely to elicit an incriminating response"); *United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007) (noting that the government conceded that asking whether a suspect had a weapon is an interrogation); *United States v. Crowder*, 62 F.3d 782, 785–86 (6th Cir. 1995) (concluding that an officer asking about the location of a firearm in a house was an interrogation); *United States v. Brown*, 720 F.2d 1059, 1068 (9th Cir. 1983) (concluding that a question whether a suspect "got any dope" was an interrogation); *Smith v. Commonwealth*, 312 S.W.3d 353, 359 (Ky. 2010) ("It is self-evident that [the officer's] unambiguous question ('Do you have any drugs or weapons on you?') intended to illicit, and indeed did illicit, an incriminating response . . . .").

That a question reasonably likely to induce an incriminating response concerned what a lawful search may reveal does not render the question any less an "interrogation." Asking whether there is "anything 'illegal'" in a person's pockets upon arrest "clear[ly] . . . qualifie[s] as 'interrogation.'" *Figueroa-Serrano*, 971 F.3d at 810, 813; *see also United States v. Hernandez*,

476 F.3d 791, 795–96 (9th Cir. 2007) (concluding that an officer asking "what is this?" after pulling an opaque plastic bag containing drugs out of an arrestee's pocket during a pat-down was an interrogation); *Harryman v. Estelle*, 616 F.2d 870, 873 (5th Cir. 1980) (concluding that an officer asking "What is this?" after finding "a condom containing a white powdered substance" in an arrestee's waistband during a search incident to arrest was an interrogation). Similarly, asking whether drugs or firearms are in a vehicle is an interrogation even if officers have the lawful authority to search the vehicle. *See Ashmore*, 609 F. App'x at 308–09, 317; *Hogan*, 539 F.3d at 921–22. So, too, is requesting that a person disclose the locations of firearms and provide combinations to unlock cases containing the firearms during a search of a house pursuant to a warrant. *See United States v. Green*, 272 F.3d 748, 750, 752 (5th Cir. 2001); *see also Ray*, 690 F. App'x at 371–72 (concluding that an officer asking whether a person "owned or possessed a firearm" while executing a search warrant of his house "certainly" was an interrogation).

The majority's reasoning—that when officers have a right to search a person, they can seek incriminating answers from the person regarding what they may find—also ignores that constitutional rights in the criminal-procedure context limit *how* law enforcement can gather information, not just *what* information it can gather. The Fourth Amendment protects "against unreasonable searches and seizures," U.S. Const. amend. IV, and "[t]he fact that equivalent information [can] be obtained by other means does not make lawful the use of means that violate the Fourth Amendment," *Kyllo v. United States*, 533 U.S. 27, 35 n.2 (2001); *see also United States v. Maynard*, 615 F.3d 544, 566 (D.C. Cir. 2010) ("[W]hen it comes to the Fourth Amendment, means do matter."), *aff'd sub nom. United States v. Jones*, 565 U.S. 400 (2012). The Fifth Amendment protects "against compulsory self-incrimination," and *Miranda* "concluded that in the context of 'custodial interrogation' certain procedural safeguards are necessary to protect" that right—specifically, "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of [those] procedural safeguards." *Innis*, 446 U.S. at 297 (quoting 384 U.S. at 444). That law enforcement can obtain the same information through means other than an un-*Mirandized* statement is thus neither here nor there.

The majority identifies no case that has adopted its position here. *Robinson* merely discussed the Fourth Amendment reasonableness of searches incident to arrest, *see* 414 U.S. at 230–35, and said nothing about *Miranda* or interrogations. *Woods* likewise is inapposite—notwithstanding the majority's chosen quote. *See* Maj. Op. 4 ("information '[the officer] was already entitled to know'" (quoting 711 F.3d at 740–42)). *Woods* held that an officer's asking "What is in your pocket?" after feeling an object during a search incident to arrest was not an "interrogation" because the question "was not an investigatory question or otherwise calculated to elicit an incriminating response." 711 F.3d at 741. "The answer," the court noted, "could have been either innocuous or incriminating," ranging from "It's my keys" to "contraband." *Id.* And in context, *Woods* said, "The fact that [the officer's] question was not reasonably likely to elicit an incriminating response beyond what he was already entitled to know (i.e., what was the object in Woods's pocket) is also important because it clarifies that the question was not intended to obtain incriminating information." 711 F.3d at 742. Although "not dispositive," intent is relevant to "whether certain conduct amounts to custodial interrogation." *Id.* *Woods* thus centered on whether a question was "reasonably likely to elicit an incriminating response," and an anodyne question like "What is in your pocket?" simply did not fit that bill. *Id.* Here, by contrast, Murray's question whether Lester had "any other drugs" on his person, No. 22-6076, R. 50, PID 106, was reasonably likely to elicit an incriminating response.

I reject the majority's assertion that "the open-ended *Woods* question . . . was *more* likely to incriminate" than the question here. Maj. Op. 5. It reasons that "Lester could have said 'no,'" and an open-ended question like the one in *Woods*, unlike Murray's question, could have swept in a response referencing something incriminating other than drugs. *Id.* First, it is the very targeting of the inquiry to illicit material—drugs—that makes Murray's question reasonably likely to induce an incriminating response. Perhaps that is why the weight of authority discussed above has concluded that questions aimed at drugs and other contraband, including those calling for a yes-or-no answer, constitute interrogations. Second, if an officer could avoid engaging in an interrogation simply by asking a yes-or-no question on an incriminating topic, *Miranda*'s protection would be illusory. And third, I agree that as a matter of best practice, an officer should not ask a broad, open-ended question when it suffices to ask a simple inquiry targeted toward safety—for example, "Do you have anything in your pocket that might harm

me?"—but a single open-ended query like "What is in your pocket?" upon feeling an object is nonetheless not reasonably likely to induce an incriminating response, unlike Murray's question whether Lester had drugs.

The majority then says that "questions about what's on an arrestee's person are 'normally attendant to arrest' and," therefore, "aren't 'interrogations' subject to *Miranda*." *Id.* (quoting *Innis*, 446 U.S. at 301). Not so. Questions "normally attendant to arrest and custody," as *Innis* used the phrase, are routine questions necessary to further a legitimate police procedure, and Murray's question does not fall into that category.

*Pennsylvania v. Muniz*, 496 U.S. 582 (1990), and *South Dakota v. Neville*, 459 U.S. 553 (1983), illustrate this point. In *Muniz*, the Court held that an officer did not interrogate a person when discussing physical sobriety tests and a breathalyzer test after arresting the person for drunk driving. *See* 496 U.S. at 603–04. "The dialogue" on the physical tests "contained limited and carefully worded inquiries as to whether [the person] understood [the officer's] instructions, but these focused inquiries were necessarily 'attendant to' the police procedure held by the court to be legitimate" and thus the person's "incriminating utterances" were not "in response to custodial interrogation." *Id.* The officer was similarly careful in discussing the breathalyzer test, "question[ing] [the person] only as to whether he understood [the] instructions and wished to submit to the test. These limited and focused inquiries were necessarily 'attendant to' the legitimate police procedure and were not likely to be perceived as calling for any incriminating response." *Id.* at 605 (citation omitted). And in *Neville*, the Court held that, "[i]n the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test [was] not an interrogation." 459 U.S. at 564 n.15. "The police inquiry" was "normally attendant" because it was "highly regulated by state law, and [was] presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography." *Id.* (quoting *Innis*, 446 U.S. at 301). This and other courts have applied the "normally attendant to arrest and custody" phrase in similar circumstances.[3]

---

[3]*See, e.g.*, *United States v. Chalmers*, 554 F. App'x 440, 448 (6th Cir. 2014) (concluding that officers did not interrogate the defendant when communicating information about a recovered firearm to a dispatcher in the defendant's presence because they "were not attempting to bait [him] into making an incriminating statement, as the

Murray's question here, however, was very different. Explicitly asking whether a person has drugs is not a highly regulated or routine matter comparable to a request to submit to fingerprinting, photographing, or sobriety tests. And unlike, for example, the sobriety tests in *Muniz*—where an officer had to ensure comprehension of his instructions for the tests to occur—an inquiry targeted at drugs on one's person is far from necessary to effectuate a pat-down search. Further, Murray's question does not bear features that we emphasized in noting that the question in *Woods* was "'normally attendant' to an arrest," 711 F.3d at 741. The question there was open ended and "an automatic, reflexive" response to "unfolding events" that "had nothing to do with an interrogation as that term is commonly understood." *Id.* Yet here, Murray's question was directed at Lester's possession of contraband on his person, rendering it a paradigmatic investigatory inquiry. If anything falls within the heartland of *Miranda*, it is a targeted question whether a person knowingly possesses drugs.

Simply put, that Murray asked whether Lester had any drugs on him while executing a lawful pat-down search did not transform his otherwise incriminating question into an innocuous

---

record establishes that conducting a background check on the weapon was part of their police work and attendant to [his] arrest."); *United States v. Morgan*, 738 F.3d 1002, 1004–05 (9th Cir. 2013) (concluding that an agent reading a standard form containing *Miranda* advisements was "normally attendant to arrest and custody" because the form was part of the "standard processing procedure" and "read to every arrestee"); *United States v. Blake*, 571 F.3d 331, 340–41 (4th Cir. 2009) (concluding that an officer providing the defendant a statement of charges indicating that he had been named as a triggerman and noting his murder charge and the maximum statutory penalty was "an action 'normally attendant to arrest and custody'" because the officer had a "legal duty to provide [him] with the document" (quoting *Innis*, 446 U.S. at 301)); *United States v. Li*, 206 F.3d 78, 83 (1st Cir. 2000) ("The simple request to slow the ship was not a remark that [the officer] should have known was reasonably likely to elicit an incriminating response. Rather, the request appears to be of the type that would normally attend a nautical arrest [and thus] not [an] 'interrogation' as the word is understood by *Miranda*." (quoting *Innis*, 446 U.S. at 301)); *United States v. Roman-Zarate*, 115 F.3d 778, 782 (10th Cir. 1997) ("Agent Bakios's question, posed to the other agents to determine whether [the defendant] had invoked his right to counsel, does not fall within the Court's definition of interrogation. Instead, the agent's question seems quite consistent with conduct attendant to arrest and custody."); *see also* 2 Wayne R. LaFave et al., *Criminal Procedure* § 6.7(b) (4th ed. Dec. 2023 update) ("Both prior to and following *Muniz*, lower courts—usually relying upon the *Innis* assertion that 'interrogation' does not include those words and actions 'normally attendant to arrest and custody'[—]have held that routine inquiries during the booking process are lawful even absent *Miranda* warnings, and even after a defendant has invoked his right to counsel." (footnotes omitted)); *id.* § 6.7(b) n.45 ("That phrase has also been interpreted as covering police statements to the suspect by way of warning him of his rights or explaining why he was arrested; inquiry of defendant as to where he keeps his identification; inquiry of defendant whether he knows why he was arrested; inquiries necessary to insure an accurate horizontal gaze nystagmus test; inquiries to determine if the defendant needs medical treatment; reciting what evidence was seized incident to his arrest; stationhouse processing of drugs in defendant's presence; and inquiry of the arrestee as to whether he will take a blood-alcohol test or breathalyzer test, will give a urine sample, or will perform a series of sobriety tests." (citations omitted) (collecting cases)).

one. Murray was entitled to learn what Lester had on his person by *searching* Lester, not by *interrogating* Lester without first *Mirandizing* him.

B.

The majority also concludes that, "even if *Miranda* did govern [Murray's] question, it would be subject to the 'public safety' exception" under *New York v. Quarles*, 467 U.S. 649 (1984). Maj. Op. 5. Murray "didn't overstep by screening for items that could 'stick or harm' him during the pat-down." *Id.* at 6. He "had already found crack cocaine on Lester's person, so it was reasonable to worry that Lester might also be carrying related hazards—such as drugs that can be absorbed directly or indirectly through touch, or drug paraphernalia that might stick (needles) or cut (razors) him." *Id.*

Without doubt, Murray could ask about things that might "stick or harm" him—but asking about drugs was a bridge too far. The public-safety exception is "narrow" and applies only to "questions necessary to secure [officers'] own safety or the safety of the public," not "to elicit testimonial evidence." *Quarles*, 467 U.S. at 658–59. An officer must have an objectively "reasonable belief based on articulable facts that [the officer is] in danger." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). And an officer cannot reasonably fear harm from mere incidental contact with drugs during a pat-down. Courts must guard against the public-safety exception becoming a "*per se*" rule that sanctions "questioning people in custody on narcotics charges." *United States v. Mobley*, 40 F.3d 688, 693 n.2 (4th Cir. 1994); *see also United States v. Reyes*, 353 F.3d 148, 155 (2d Cir. 2003); *United States v. Jones*, 567 F.3d 712, 717 (D.C. Cir. 2009); *State v. Smith*, 138 A.3d 223, 232 n.9 (Conn. 2016); *Watson v. United States*, 43 A.3d 276, 289 (D.C. 2012). And if that risk is present for questions about weapons or other clearly harmful objects, *see Mobley*, 40 F.3d at 693 & n.2, it is present with force for questions about drugs themselves. Otherwise, officers would routinely precede every *Miranda* warning with such questions, and "a right enshrined in the words of the Constitution [would be] lost in the reality of the street," *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991).

In reasoning to the contrary, the majority suggests that this court has "previously applied the public-safety exception in related cases." Maj. Op. 6 n.3. Only one of the Sixth Circuit cases

it cites—*United States v. Mohammed*, 501 F. App'x 431 (6th Cir. 2012) (per curiam)—involved an inquiry about drugs.  There, an officer asked about "weapons, drugs, or anything sharp that would stick him" during a search, *id.* at 443—a question similar to that involved here.  Our unpublished decision "conclude[d] that the officer's question whether Mohammed, a suspected heroin dealer, had drug paraphernalia on his person that could harm the officer in conducting a routine pat down stem[med] from an objectively reasonable concern for the officer's safety." *Id.* at 444.  "Accordingly," the court ruled "that the officer's question was proper under the public-safety exception *to the extent that it asked about weapons or other harmful objects*." *Id.* (emphasis added).  And, the court continued, "[e]ven if [the court] were to conclude otherwise," admitting the statement was "harmless." *Id.*  "Surely, the admission of a statement that Mohammed did not possess drugs or drug paraphernalia on his person does not prejudice his defense." *Id.*  Thus, all *Mohammed* held regarding the officer's inquiry about drugs, as opposed to drug paraphernalia, was that any *Miranda* error was harmless—not that the public-safety exception applies to a question about drugs on a person.

As for the out-of-circuit cases the majority cites, *see* Maj. Op. 6 n.3, *United States v. Simpkins*, 978 F.3d 1 (1st Cir. 2020), applied the public-safety exception to an officer asking "[w]hat's that?" after feeling an object in the defendant's pocket during a pat-down search, to which the defendant replied "[j]ust a little bit of fentanyl." *Id.* at 10 (alterations in original) (citations omitted).  The question was "open-ended," *id.*—similar to that in *Woods*—and related to the "reasonable concern" that "weapons" on the defendant's person jeopardized "officer safety," especially because the question came "on the heels of the defendant's admission that he possessed a weapon in the form of a pocketknife," *id.*  That open-ended question unrelated to drugs and in the context of the officer's reasonable concern about a weapon starkly differs from Murray's pointed question whether Lester had drugs on his person.

The only other relevant case the majority cites is *United States v. Carrillo*, 16 F.3d 1046 (9th Cir. 1994).  There, the Ninth Circuit applied the public-safety exception to an officer asking whether the defendant "had any drugs or needles on his person." *Id.* at 1049.  But the court in *Carrillo* had testimony before it that the officer had previously suffered injuries from exposure to toxic substances when searching detainees in the past. *See id.* at 1049 & n.1.  And *Carrillo* is

inconsistent with the "narrow[ness]" of the public-safety exception, *Quarles*, 467 U.S. at 658, and "the type of emergency, volatile situation that the public safety exception is designed to serve," *United States v. Lim*, 897 F.3d 673, 691 (5th Cir. 2018). Further, *Carrillo* is an outlier. The majority cites no other federal circuit court that has reached the same conclusion as the Ninth Circuit in *Carrillo*, and the bulk of state courts to consider the issue have declined to apply the public-safety exception to questions about drugs under similar circumstances, *see, e.g.*, *Smith*, 312 S.W.3d at 359–60; *State v. Pender*, 47 P.3d 63, 65 (Or. Ct. App. 2002); *State v. Strozier*, 876 N.E.2d 1304, 1310–12 (Ohio Ct. App. 2007); *People v. Allen*, 199 P.3d 33, 36 (Colo. App. 2007); *People v. Johnson*, 716 N.Y.S.2d 493, 494 (N.Y. App. Div. 2000); *People v. Cressy*, 55 Cal. Rptr. 2d 237, 240–41 (Cal. Ct. App. 1996).

## III.

In sum, the majority errs in finding no "interrogation" for *Miranda* purposes and in applying the public-safety exception to the officer's inquiry regarding drugs. A simpler and more measured ground—harmless error—yields the same result and does not unnecessarily make new law on a forfeited issue. Accordingly, although I otherwise join in the majority opinion, as to these issues, I concur in the judgment only.